Josefa **DOPICO-FERNANDEZ**,
Plaintiff, Appellant,

v.

**GRAND UNION SUPERMARKET**, et al., Defendants, Appellees.

No. 87–1313.

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1987.

Decided March 2, 1988.

---

**12**

Gerardo Mariani, San Juan, P.R., with whom Woods & Woods, Hato Rey, P.R., was on brief, for plaintiff, appellant.

Ricardo L. Rodriguez Padilla, with whom C.A. Chavier Stevenson, San Juan, P.R., was on brief, for defendants, appellees.

Before BOWNES and BREYER, Circuit Judges, and LAFFITTE,* District Judge.

LAFFITTE, District Judge.

Plaintiff appellant Josefa Dopico Fernández was knocked to the ground just outside defendant appellee's retail business estab-

* Of the District of Puerto Rico, sitting by designa-

lishment. The jury found appellee liable for $3,906 in medical expenses incurred by Ms. Dopico Fernández and $144,740 in loss of income. The trial judge entered a judgment notwithstanding the verdict, finding as a matter of law that appellee had no duty to secure the safety of persons outside its store. Appellant challenges the district judge's order, as well as the jury's refusal to award her damages for past and future pain and suffering. Since we uphold the judgment n.o.v., we need not address the damages issue.

A judgment notwithstanding the verdict should be granted only when the evidence, and the inferences to be drawn therefrom, viewed in the light most favorable to the nonmovant (appellant), could lead reasonable persons to but one conclusion. *Wagenmann v. Adams*, 829 F.2d 196, 200 (1st Cir.1987). In applying this standard, we do not evaluate the credibility of witnesses or the weight of the evidence presented at trial. *Joia v. Jo–Ja Service Corp.*, 817 F.2d 908, 910–11 (1st Cir.1987). Rather, "[w]e take the facts as shown by [appellant's] evidence and by at least such of [appellee's] uncontradicted and unimpeached evidence as, under all the circumstances, the jury virtually must have believed." *Wagenmann*, supra, at 200, quoting *Karelitz v. Damson Oil Corp.*, 820 F.2d 529, 530 (1st Cir.1987).

Except in one or two minor areas, this appeal does not involve disputed facts or credibility determinations at all. In the few instances where disputed facts arise, they will be evaluated in accordance with the foregoing standards. The primary basis for the district judge's judgment n.o.v. was his determination that as a matter of law the facts presented at trial did not establish appellee's control over and, consequently, liability for accidents occurring on the sidewalk outside appellee's store. The facts are as follows.

On January 6, 1982 appellant took a taxi to the Bonneville Commercial Center in Caguas, Puerto Rico. This mini-mall consisted of seven or eight retail establish-

tion.

ments, including appellee Grand Union Supermarket ("the supermarket"), appellant's destination. The supermarket did not own the property on which it sat, but leased the premises from the owners of the mini-mall, not a party to this action. When appellant approached within several feet of the entrance to the supermarket, and while still on the sidewalk outside, several skateboarding youths suddenly careered across her path and knocked her to the ground causing the injuries which are the object of this suit. The youths continued on their merry way, have never been identified, and are not parties to this action. Appellant's allegation, disputed by appellee but accepted by the trial judge, that the youths were residents of a nearby 'caserio" (housing project) is accepted as fact for purposes of this appeal. Similarly accepted as fact is appellant's testimony that she was a long time customer of the supermarket.

On the other hand, not supported by the evidence presented at trial is appellant's allegation that youths often engaged in roughplay and dangerous sport on the sidewalk in front of the supermarket. To establish this as fact appellant relies on a reported statement relative to the accident made by the market's manager to the assistant manager to the effect that "you cannot deal with them [the housing project kids]. They would come down and they would go into the parking lot and damage the cars and do things like that and that it was uncontrollable." Even accepting this statement as an accurate description of the situation, in no way does it establish that the problem was a common one. The only evidence presented at trial concerning the frequency of free-wheeling activities at the mini-mall came from appellee's witness, a patron of the mini-mall for some eight years, who testified that he had seen youngsters so engaged on about twenty occasions during that stretch.

Finally, the relative placement of the sidewalk and its surroundings was not disputed. Large plate glass windows gave out on the sidewalk and allowed those inside the store to view that which transpired immediately outside. At the time of the accident all parts of the sidewalk were directly accessible from the parking lot as no guard rails or fence channelled ingress and egress. Subsequent lessees of the storefront have installed such structures. No security guard patrolled the mini-mall premises.

Whether one takes the evidence as presented above, in accordance with the given standard of review, or one takes as fact all of appellant's allegations concerning these matters, makes no difference in the outcome of our review of the judgment n.o.v. The dispositive issue in the judgment was not the severity and duration of the dangerous activity. The trial court found, rather, that the supermarket had no duty to insure the safety of persons located on the sidewalk outside the store, regardless of the level of skateboarding activity. The dispositive facts were the terms of the rental agreement between the supermarket lessee and the mini-mall lessor. Looking at this contract against the backdrop of relevant caselaw, the District Court determined that reasonable persons could not but conclude that the supermarket had no contractual or legal duty to ensure the safety of an individual approaching appellee's premises on the sidewalk used in common with other lessees.

Appellant brought this action under the general tort liability statute of Puerto Rico.[1] Since appellant charges the supermarket with an ommission causing damages, she must prove as a threshold that the supermarket had a duty to act to avoid the harm. *Sociedad de Gananciales v. González Padín*, 86 J.T.S. 23 (March 21, 1986). As the trial court correctly surmised, however, duties arising under tort law were not the only obligations operating in this case. Appellee supermarket was renting space from the owner of the mini-mall under the terms of a lease contract.

1. Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. sect. 5141 provides in pertinent part: A person who by an act or omission causes damages to another through fault or negli- gence shall be obliged to repair the damage so done.

Though the existence of a lease does not bar application of the general tort liability or other statute, it "may more or less affect the rights and obligations of the parties." *Torres v. Fernández*, 56 P.R.R. 459, 470 (1940). *See also, Fireman's Fund American Insurance Co. v. Almacenes Miramar, Inc.*, 649 F.2d 21, 25 (1st Cir. 1981).

 The lease contract covering appellee's rental of the store from the landlord states that the landlord has demised and leased the store premises,

TOGETHER with the appurtenances thereto and the use, in common with others, of the parking areas, roadways, means of ingress and egress and service areas shown on the annexed drawing, which use shall be for itself, its officers, employees, patrons and invitees, for the term of 15 years, etc.

Paragraph 2. Appellant argues that common sense and the common definition dictate that the term "appurtenances," which are apparently leased outright and exclusively to tenant by the contract, encompasses the sidewalk in front of the store. Because tenant appellee exclusively leased the sidewalk as an appurtenance, appellant reasons, it had exclusive control over and liability for activity occurring on the sidewalk.

Appellant's definition and sense of the word "appurtenance" may very well obtain in the abstract. Use of a contiguous sidewalk can generally be described as incident to the full use and enjoyment of, or appurtenant to, the use of the storefront. Under the terms of the instant rental agreement, however, the sidewalk is expressly taken out from under the general "appurtenance" umbrella, and placed into the category of "common use" in the next phrase, through the term "means of ingress and egress." The better view of paragraph 2, then, is that the sidewalk is an area of "common use" under the contract, and not an "appurtenance" leased exclusively to appellant. This interpretation is bolstered by paragraph 41, which describes as the demised premises the store "together with,"

in slightly but crucially different language than paragraph 2,

the use for the Tenant, its employees, customers and invitees, in common with the other tenants of the shopping center; of the parking areas, service areas, roadways, *sidewalks*, and other facilities to be provided by the Landlord in the shopping center. (Underline added.)

It is noteworthy that not only were the sidewalks expressly listed under common areas, but that the landlord was to "provide" for them.

The lease contract also states that the tenant shall make all incidental repairs to the interior of the premises, but the landlord shall make all other repairs, including structural repairs, exterior repairs, and repairs of the sidewalk, paragraph 3. Supervision and cleaning of the parking and service areas is reserved to the landlord, paragraph 29. In two paragraphs primarily concerned with tenant's obligation to pay rent, paragraph 18, and the landlord's obligation to pay taxes and mortgage debts, paragraph 20, there is broad language to the effect that in the event of landlord's failure to meet any obligation under the contract, the tenant *may*, upon notice and if an emergency exists, perform the obligation subject to reimbursement by landlord. Even taking the broad language out of context, as appellant urges, the paragraphs in no way can be read as imposing an obligation on the tenant. The word "may" is used, not "shall."

 In view of the foregoing we must conclude, along with the trial court, that the lease contract put exclusive control of the sidewalk in the hands of the landlord. The supermarket merely enjoyed the use of the sidewalk and the parking lot in common with other lessees of space in the mini-mall, for which it paid a proportionate share for upkeep. According to the contract, the obligation to maintain the sidewalk and parking lot fell upon the landlord, not a party to this case. Though the contract is not necessarily wholly determinative of the legal obligations of the parties, there is no indication that a different result lies under Puerto Rico tort law.

In *Torres v. Fernández*, supra, a tenant slipped and fell on a staircase used in common with other tenants. Expressly echoing the *Restatement of Torts*, sect. 360,[2] the Puerto Rico Supreme Court held that the landlord retained a duty to keep in reasonably safe condition those portions of the building, such as halls, approaches, and stairways, that remained under his control. This principle was later reiterated.

> [W]hen a building consists of several apartments or rooms and they are leased to different tenants, the entrances, foyers, staircases and halls of common use are, except when otherwise provided, in the possession and under the control of the landlord, and, consequently, the responsibility for their condition and safety rests in the latter.

*Santaella v. Licari*, 83 P.R.R. 855, 860 (1961). *See also, Corchado v. Fernández Carballo*, 88 P.R.R. 804 (1963) (in a building rented to various tenants, it was "the duty of the lessor to provide for its tenants an adequate and reasonably safe means to reach their offices and apartments").

■ Analogizing the mini-mall to a building with rooms to let, these three cases are instructive as to a tenant's lack of obligation with respect to common areas. The only other case on point which either party could tag is *Rivera v. Supermercados Amigo, Inc.*, 106 D.P.R. 657 (1977), which involved a slip and fall in a common area (parking lot) at a mini-mall. Ultimately it was held that nobody could be held liable for plaintiff's unforeseeable slip on a single mango peel. In the course of arriving at that holding, however, the *Rivera* court opined that "normally the owners of the establishments served by these common public areas are responsible for maintaining them free of obstacles, traps, and slippery spots." *Id.* at 660. On this slender hook, appellant in effect attempts to hang her case. The trial court, however, charac-

terized the broad statement as dicta and as against the weight of authority. We agree.

The clear rule in Puerto Rico is that an owner of an establishment is potentially liable for all injuries occurring in areas where he has retained control, including areas used in common by the owner's tenants. None of the many cases cited by appellant contravene this rule. *See, e.g., Cotto v. C.M. Insurance Co.*, 116 D.P.R. 644 (1985); *Aponte Betancourt v. Meléndez*, 87 P.R.R. 619 (1963); *Goose v. Hilton Hotels*, 79 P.R.R. 494 (1956). Moreover, the facts in these cases are inapposite to the facts present in this appeal. They involve accidents which occurred inside of the business establishment, where both tenant and landlord may be held liable, the landlord only if he has knowledge of the dangerous condition. *Maldonado v. Interamerican University*, 104 D.P.R. 420 (1975). While the owner may be held liable, along with the tenant, for injuries that occur within the leased space, the opposite is not necessarily true. A tenant is not responsible for areas of owner control outside of the leased premises. Finally, appellant has pointed to no basis in Puerto Rico law for imposing on a tenant a duty to inform the owner of a dangerous condition existing in areas for which the tenant has no duty to make safe.

The judgment of the district court is AFFIRMED.

■

---

2. *Restatement (Second) of Torts*, sects. 360 and 361 provide for the liability of the landlord for a dangerous condition existing in her area of control if she has constructive knowledge of the condition. Section 360 would also hold the tenant liable to his licensees if he has actual knowledge, comment a. *But see, 62 Am Jur 2d, Premises Liability*, sect. 12–13 and 68 ALR 3d 382 for the general rule that only the landlord owes a duty to a tenant's licensees to exercise ordinary care to make reasonably safe common outside walks over which the landlord retains control for the use of her tenants.