Jenny DOE, Plaintiff,

v.

CLOVERLEAF MALL, William P. Engel, Marvin R. Engel, J.C. Penney Company, Inc., K & B Mississippi Corporation, Morrison Incorporated, McCrory Corporation, McRae's, Inc., and Aronov Management Company, Inc., Defendants.

Civ. A. No. J92–0462(L)(N).

United States District Court, S.D. Mississippi, Jackson Division.

June 8, 1993.

**868**

Thomas R. Frazer and Shane F. Langston, Langston, Frazer, Dockins & Sweet, Jackson, MS, for plaintiff.

James D. Holland, Upshaw, Williams, Biggers, Page & Kryger; Roy A. Smith, Daniel, Coker, Horton & Bell; Clifford B. Ammons, Watkins & Eager; and Cary E. Bufkin, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, MS, for defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the application of defendants Cloverleaf Mall, William P. Engel, Marvin R. Engel, K & B Mississippi Corporation, J.C. Penney Company, Inc., McRae's, Inc., and Morrison, Inc. for review of an order entered by the magistrate judge on February 11, 1993 remanding this case to the Circuit Court of the First Judicial District of Hinds County, Mississippi.[1] Plaintiff Jenny Doe has responded in support of the magistrate judge's ruling. The court has considered the memoranda of authorities submitted by the parties, together with attachments, and has reviewed pertinent case authority, and concludes for the reasons that follow that the ruling of the magistrate judge must be reversed.

On June 28, 1991, plaintiff drove from her home to the Cloverleaf Mall in Hattiesburg, Mississippi and parked her car in the mall parking lot on the east side of Penney's. She went into Penney's, where she purchased a swimsuit for her roommate and, upon returning to her car, she was abducted at gunpoint and forced to drive to a remote location where she was physically and sexually assaulted by her assailant. Plaintiff brought this action against Cloverleaf Mall and its principals, as well as the mall management company and selected mall tenants, alleging that defendants' failure to provide a reasonably safe and secure premises for business invitees of the mall, including plaintiff, proximately caused or contributed to the attack against her.[2] Plaintiff initiated the suit in the Hinds County Circuit Court. While she is a Mississippi resident and defendants Cloverleaf Mall, William and Marvin Engel, J.C. Penney, McCrory, Morrison and Aronov are nonresidents of Mississippi, two of the named defendants, McRae's and K & B, are

---

1. An application for review filed by Cloverleaf Mall, K & B and J.C. Penney was separately joined in by McRae's and Morrison.

2. This court has previously ordered that plaintiff may proceed in this case under a pseudonym in view of the private nature of her allegations.

Mississippi corporations. Defendants, however, alleging that K & B and McRae's were fraudulently joined to defeat diversity, removed the case to this court. Plaintiffs moved to remand.

The magistrate judge, relying on the Mississippi Supreme Court's decision in *Wilson v. Allday*, 487 So.2d 793 (Miss.1986), concluded that while the issue was close, there was a possibility that plaintiff would be able to establish a jury issue on the question of whether the tenants' use of the parking lot was tantamount to possession and control so as to give rise to a duty to maintain the area in a reasonably safe condition. This court is compelled to conclude that the magistrate judge's ruling is clearly erroneous and contrary to law.

■ Defendants' removal of this cause was predicated on their assertion that diversity jurisdiction exists since the plaintiff cannot possibly recover against the resident tenant defendants because they had no legal duty to protect the plaintiff from harm. The defendants bear the "heavy" burden of demonstrating fraudulent joinder. *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 101 (5th Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990) (citing *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989)). To sustain their burden, it is incumbent on defendants to establish that the plaintiff has no possibility of recovery against the resident defendants:

> [W]here the removing party grounds its allegations of "fraudulent joinder" upon a theory that the plaintiff cannot recover from the in-state defendant as a matter of law, the trial court should resolve all disputed questions of fact in favor of the plaintiff and then determine whether there could possibly be a valid cause of action set forth under state law.

*B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (5th Cir.1981); *see also Carriere*, 893 F.2d at 100. In analyzing a fraudulent joinder issue, whether a claim has been stated against the resident defendants depends on whether there is "even a possibility that a state court would find a cause of action stated ... on the facts alleged by the plaintiff," and in making that determination, the court is "to evaluate all of the factual allegations in the light most favorable to plaintiff, resolving all contested issues of substantive fact" contained in the plaintiff's state court pleadings in the light most favorable to plaintiff. *B, Inc.*, 663 F.2d at 549–50. In *Parks v. New York Times Company*, 308 F.2d 474, 477 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964), the court explained as follows:

> The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the plaintiff as the basis of liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous. And a joinder is fraudulent if the facts asserted with respect to the resident defendant are shown to be so clearly false as to demonstrate that no factual basis existed for any honest belief on the part of plaintiff that there was joint liability.

■ The Fifth Circuit has consistently advised that in making determinations of fraudulent joinder, the trial court should avoid pretrying substantive issues of fact:

> A district court need not and should not conduct a full scale evidentiary hearing on questions of fact affecting ultimate issues of substantive liability in a case in order to make a preliminary determination as to the existence of subject matter jurisdiction. The question of whether the plaintiff has set forth a valid claim against the in-state defendant(s) should be capable of summary determination.

*B., Inc.*, 663 F.2d at 551. At the same time, however, the district court is permitted to pierce the plaintiff's pleadings to determine whether there exists, in fact, a basis for imposing liability against the resident defendant:

> While we have frequently cautioned the district courts against pretrying a case to determine removal jurisdiction, we have also endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims. In [*B., Inc.*], we carefully discussed the procedures for assessing fraud-

ulent joinder claims and noted that "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment. . . ." *Id.* at 549 n. 9. The *B., Inc.* court expressly authorized consideration of evidence outside of the pleadings:

> In support of their removal petition, the defendants may submit affidavits and deposition transcripts; and in support of their motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint.

*Id.* at 549. Similarly, in *Keating v. Shell Chemical Co.*, 610 F.2d 328 (5th Cir.1980), we approved "piercing the pleadings" to determine controlling state law for purposes of resolving fraudulent joinder questions. We remanded that case for a determination "[b]y summary judgment or otherwise" whether joinder was "fraudulent." *Id.* at 333.

> In short, this circuit treats fraudulent joinder claims as capable of summary determination. When determining fraudulent joinder, the district court may look to the facts as established by summary judgment evidence as well as the controlling state law.

*Carriere,* 893 F.2d at 100.

■ "Piercing the pleadings" in this fashion is permitted so as to avoid a plaintiff's depriving diverse defendants of a federal forum by mere conclusory allegations which have no basis in fact. Where the plaintiff's complaint is devoid of any *factual* allegations suggesting a basis for recovery against a particular defendant, there can be no ground for concluding that a claim has been stated. *See Jewell v. City of Covington,* 425 F.2d 459, 460 (5th Cir.), *cert. denied,* 400 U.S. 929, 91 S.Ct. 195, 27 L.Ed.2d 189 (1970) (general conclusionary allegations unsupported by facts insufficient to constitute cause of action); *see also Pierre v. American–International Travel, Inc.,* 717 F.Supp. 435, 437 (M.D.La.1989) (finding nondiverse defendant

fraudulently joined where petition alleged no facts to establish legal duty on part of resident defendant to plaintiff); *D'Addio v. L.F. Rothschild, Inc.,* 697 F.Supp. 698, 706–07 (S.D.N.Y.1988) (complaint alleging defendants breached fiduciary duties to plaintiff without alleging facts showing relationship failed to state claim). Because the plaintiff in the case *sub judice* has not demonstrated the existence of *any facts* which could reasonably be viewed as supporting her claim against the resident defendants, the motion to remand should have been denied.

■ The question presented by the motion to remand was whether the plaintiff had stated a basis for recovery in negligence against the resident defendants. The requisite elements of a negligence cause of action are "duty or standard of care, breach of that duty or standard, proximate causation and damages or injury." *Lyle v. Mladinich,* 584 So.2d 397, 399 (Miss.1991). Fundamentally, therefore, a negligence action lies only where there is a duty owed by the defendant to the plaintiff. The specific issue on the motion to remand was whether the resident defendants had a duty to maintain the mall parking lot in a reasonably safe condition for mall patrons.[3]

■ Generally speaking, under Mississippi law, a tenant may be liable for injuries occurring on those parts of the premises which are part of the leasehold; that is, a tenant's duty to invitees extends to those parts of the premises which are actually leased by the tenant. A tenant's duty also extends to areas of the premises not within the leasehold but as to which the tenant has covenanted to maintain and repair, and to areas as to which the tenant exercises actual possession or control. And in the latter instance, that duty of care to invitees devolves upon the tenant even though the lessor has contracted to maintain and repair those parts of the premises.

■ The plaintiff here maintains that the resident tenants have concurrent liability with their lessor on a number of bases. She contends first that each of the tenant defen-

---

3. Mississippi law recognizes a duty on the part of a premises owner or occupier to protect invitees against foreseeable assaults by third persons.

*See Lyle v. Mladinich,* 584 So.2d 397 (Miss.1991). The issue here is whether these resident defendants could be chargeable with such a duty.

dants, including McRae's and K & B, leased, in addition to their actual store premises, the mall parking lot, including necessarily that portion of the parking lot where the abduction occurred. The plaintiff's position on this point is without merit. Not one of the tenant defendants actually leased any part of the parking lot. Rather, the leases establish that the mall owner retained the common areas, and granted the tenants the nonexclusive right to use of the parking lot and other common areas. K & B leased its store premises, on which it conducted its business, "together with the use in common with the other occupants of the Shopping Center and the public of the walkways, restrooms, the parking area ... and other common areas and facilities...." McRae's leased its store premises and was granted "a nonexclusive license for the use of common areas and facilities ... in common with other tenants of the Shopping Center...." The common areas were specifically made "subject to the exclusive control and management of" the lessor.[4]

■ In addition to the fact that they did not lease the parking lot, the terms of the leases make clear that the tenant defendants did not agree to maintain or repair the parking lot or other common areas. To the contrary, under the explicit terms of the parties' leases, the lessor was responsible for maintenance and repair of all common areas and facilities, including the parking areas.[5] Thus, only if these tenants had possession or control of the location from which plaintiff was abducted can they have had a duty to the plaintiff.

In *Wilson v. Allday*, a case upon which the magistrate judge placed much reliance in issuing his ruling, the main issue was, as here, "whether a lessee would be liable to a third party for injuries received on property incidental to (*but not on*) demised property

4. The leases of the remaining tenant defendants contain similar provisions.

5. K & B's lease provided as follows:

Lessor shall at its own expense operate and maintain the common areas and facilities of the Shopping Center to a first-rate standard. The common areas and facilities are hereinafter defined as consisting of the Shopping Center's common areas and facilities, actually used or available for use by Lessee, and the employees and invitees of Lessee, and including without limitation employee and customer parking areas, truck way or ways, driveways, loading docks, and areas, delivery passages, package pickup stations, pedestrian sidewalks, malls, courts, and ramps, landscaped and planting areas, retaining walls, bus stops, signs, exterior stairways, first-aid stations, comfort stations, drainage and sewerage piping and disposal thereof, pedestrian mall, pedestrian mall air conditioning and heating, parking lot and other common area, lighting facilities, shopping center pylons including tenant signs, and power for same, and all other areas and improvements provided by Lessor for the general use, in common, of Lessee, their customers and employees and other occupants of the Shopping Center.... Lessor shall maintain as common areas the parking lots within the areas of the Shopping Center shown upon exhibit "A" for the non-exclusive use (in common with such others as Lessor may prescribe, including the occupants, employees, and customers of the store or stores upon the areas of the Shopping Center not owned by Lessor) of Lessee, its agents, employees and customers for vehicle

parking; provided, however, that such use shall be subject to the provisions of Paragraph B of this Article.

B. Lessor shall have the right from time to time to establish, modify and enforce reasonable rules and regulations with respect to all facilities and areas mentioned in this section. Lessor shall construct, maintain and operate lighting facilities on all said areas and improvements and shall have the right to police the same.

McRae's lease recites the following:

Landlord shall maintain and keep in good mechanical order and repair all common areas appurtenant to the Shopping Center. Landlord shall provide all services reasonably necessary to properly operate and maintain said common areas, including keeping the same free and clear of rubbish and debris, maintaining and lighting and drainage systems in the automobile parking area, striping and marking parking areas with appropriate lines designating the individual parking space for automobiles. All common areas shall at all times be subject to the exclusive control and management of the Landlord. Landlord shall regulate, control and police the traffic in the parking areas and from time to time establish, modify and enforce reasonable rules and regulations with respect to all facilities and areas mentioned in this SECTION concerning the use of common areas by all of the tenants of said Shopping Center, their customers and invitees, which rules and regulations the Tenant herein agrees to abide by.

The leases of the other tenant defendants contain similar provisions.

(common area—parking lot) which lessor had agreed to maintain in good repair." *Wilson*, 487 So.2d at 795. The answer, the court concluded, "would depend on whether or not the lessee exercised control of the premises in question." *Id.* The court explained:

> If the lessee's use of the premises was tantamount to possession and control, then the lessee owed a duty of ordinary and reasonable care to its invitees upon the premises.... Conversely, if lessee's use of the lot did not constitute control, there would be no duty owed and therefore no cause of action.

*Id.* at 797. Thus, if

> the lessees occupied and controlled the premises in question, then there was a duty concurrent with both the lessee and lessor to repair the dangerous condition or to warn invitees coming onto the premises.

*Id.* at 798.

In *Wilson*, the plaintiff stopped at the National Food Store to shop. Her purchases were placed in a shopping cart belonging to National Food Store and as she was proceeding toward her car with the cart, the front wheel of the cart hit a pothole in the parking lot causing it to overturn. When she held onto the cart in an attempt to keep it from falling, she injured her back as the cart pulled her to the ground. In *Wilson*, National Food Store was one of only three stores located in the shopping center. And, though the lessor of the store premises was required under the terms of the lease agreement to maintain the parking lot for the use of the lessees and their customers, there was proof that National Food Store actually exercised possession and control of the parking lot. Specifically, there was proof that the tenant had erected a cart corral on the parking lot, onto which its employees went at least twelve times each day to gather its carts. Further, it invited customers to park in the lot in front of the store and instructed its employees to park in other designated areas on the lot. In light of these facts, the court determined that the issue of possession and control was properly reserved for the jury.

■ Plaintiff argues that under *Wilson*, a duty arose in the case at bar since the mall tenants, including K & B and McRae's, were granted under the lease the right and privilege of using the parking lot. It is clear that the parking lot was specifically made available under the terms of the leases for use by McRae's and K & B employees and customers, as well as the employees and customers of other mall tenants. The mere use of the parking lot, however, even though this use resulted in economic benefit to these tenants, is not "tantamount to possession and control." *See Catherman v. United States*, No. 90–CV–576, 1992 WL 175258, U.S.Dist. LEXIS 11120 (N.D.N.Y. July 21, 1992) (mere fact that defendant's patrons used entrance for access to leased space in building could not reasonably be asserted as divestment of landlord's possession and control of entryway); *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 696 (Del.Super.Ct.1989) (economic benefit standing alone will not be sufficient to create duty on part of landlord where record otherwise lacks evidence of control); *St. Phillips v. O'Donnell*, 137 Ill.App.3d 639, 92 Ill.Dec. 354, 357, 484 N.E.2d 1209, 1212 (1985) (mere use of parking lot along with customers does not show actual control of parking lot); *Hall v. Quivira Square Dev. Co.*, 9 Kan.App.2d 243, 675 P.2d 931 (1984) (lessor liable for failure to maintain leased area retained for common use of lessor's tenants where tenants and their customers merely entitled to use common area); *Leary v. Lawrence Sales Corp.*, 442 Pa. 389, 275 A.2d 32 (1971). Indeed, *Wilson* clearly holds that only where a tenant's "use of the premises [is] tantamount to possession and control" does the tenant owe a duty to its invitees upon the premises. *Wilson*, 487 So.2d at 797. If the tenant's "use of the lot [does] not constitute control, there [will] be no duty owed and therefore no cause of action." *Id.*

■ Plaintiff further insists that a "self-help" provision in K & B's lease creates control by that defendant so as to make it "in charge" of the parking lot. Plaintiff's position is without merit. A tenant's reservation of the right to make repairs or provide security should the landlord fail to do so, where the tenant never exercises that right, cannot give rise to a duty to make such repairs or provide such security. *See Catherman v. United States*, No. 90–CV–576, 1992 WL

175258, at *13, U.S.Dist. LEXIS 11120, at *39 (citing *DeLong v. United States,* No. 82–CV–1104, slip op. at *4 (N.D.N.Y.1983)) (right-to-repair clause in lease "does not provide any support" for contention that tenant is in control of that area of premises); *Dopico–Fernandez v. Grand Union Supermarket,* 841 F.2d 11, 14 (1st Cir.), *cert. denied,* 488 U.S. 864, 109 S.Ct. 164, 102 L.Ed.2d 135 (1988) (reservation unto tenant of right to perform landlord's obligations upon landlord's failure to do so could not be read to impose any obligation on tenant); *Craig v. A.A.R. Realty Corp.,* 576 A.2d 688 (Del.Super.Ct.1989) (neither right to inspect premises, nor reservation of right to inspect coupled with right to retake control under certain circumstances amounted to control); *Tu Loi v. New Plan Realty Trust,* No. 91–7273, 1992 WL 392617, *3, U.S.Dist. LEXIS 19279, at *8–9 (E.D.Pa. Dec. 15, 1992) (rejecting plaintiff's contention that landlord's retention of right to repair was tantamount to control over premises); *Underhill v. Shactman,* 337 Mass. 730, 151 N.E.2d 287 (1958) (where landlord was to maintain passageways and parking area for benefit of stores in shopping center and control over these areas remained in landlord, tenant had no duty with respect to those areas, even though tenant had right to supply extra parking attendants and duty to carry insurance covering persons injured "in or about the [demised] premises").

◼ Plaintiff argues, finally, that because McRae's and K & B, along with other mall tenants, were required under the terms of their leases to contribute to the upkeep and maintenance of the common areas, they were somehow "in charge" of the parking lot. Patently, the mere fact that these defendants contributed to a fund which was to be used by the lessor to perform its obligations under the lease could not reasonably be interpreted to impose on these tenants a duty to perform these obligations. In other words, it does not demonstrate possession and control of the common areas. It is merely a financial undertaking.

◼ The simple fact here is that the plaintiff failed to provide any factual substantiation for her allegation that the defendant-tenants had control of the mall parking lot. The question of whether a duty exists is a question of law for the court, *see Lyle v. Mladinich,* 584 So.2d 397, 400 (Miss.1991) (whether duty exists is question of law; whether duty was breached is issue for factfinder to resolve), though certainly there may be cases where resolution of that legal issue depends on the resolution of facts. This is not such a case. There are simply no facts which must be resolved.

◼ The magistrate judge apparently reasoned that because the court in *Wilson* indicated that the question of whether the lessee's use of the parking lot was tantamount to possession and control was a jury issue, then there was a *possibility* that the plaintiff would be able to establish her cause of action. *Wilson,* however, is distinguishable from the case at bar for the reason that in *Wilson,* in sharp contrast to the case at bar, the plaintiff actually presented evidence to substantiate her claim of possession and control by the tenant.[6] Therefore, a jury could have found possession and control. In this case, no facts have been alleged in support of plaintiff's allegation of possession and control by the tenant defendants. In *Catherman v. United States,* No. 90–CV–576, 1992 WL 175258, U.S.Dist. LEXIS 11120 (N.D.N.Y. July 21, 1992), the court, in granting summary judgment for the defendant tenant where there was a lack of any proof that the defendant took any action constituting control of the common area in which the plaintiff was injured, appropriately stated:

> [T]he defendant must have taken specific action constituting control of the ... area in order to assume a duty to plaintiff upon which liability for his accident may be premised. · None of the evidence before

---

6. The court would note that here, in contrast to the facts in *Wilson,* it is undisputed that McRae's and K & B are located some distance away from the area from which plaintiff was abducted. That is, they were admittedly remote tenants. Further, it is undisputed that on the date that she was abducted, plaintiff entered only one mall store, J.C. Penney. She did not patronize McRae's or K & B. These facts, however, are not dispositive since the issue is whether the defendants had possession and control of the parking lot, regardless of their relative proximity to the specific area from which plaintiff was abducted.

the court indicates that defendant took any action with respect to the [area] which could be construed as an exercise of control, nor does plaintiff suggest any evidence he would like to discover which might indicate that defendant exercised control over the ... area.

See also *Gladman v. Revco Discount Drug Centers, Inc.,* 669 S.W.2d 677 (Tenn.Ct.App. 1984) (judgment for tenant defendant for injury resulting from fall in parking lot where parking lot remained in control of lessor under lease agreement and tenant was not shown to have exercised control over parking lot); *Garcia v. Arbern Realty Co.,* 89 A.D.2d 616, 452 N.Y.S.2d 665 (2d Dept.1982) (tenant had no duty to warn patron of defective condition in common stairway where tenant did not lease stairwell and did not exercise any control over it); *Torres v. Piggly Wiggly Shop Rite Foods, Inc.,* 93 N.M. 408, 600 P.2d 1198 (Ct.App.1979) (judgment for lessee where lease agreement did not require that tenant care for parking lot and there was no showing that tenant actually had or assumed control over parking lot); *Kiser v. A.J. Bayless Markets, Inc.,* 9 Ariz.App. 103, 449 P.2d 637 (1969) (where parking lot on which plaintiff was injured was not part of premises leased by defendant tenant and responsibility for maintaining parking lot was upon lessor, plaintiff's failure to come forward with sufficient proof to show duty warranted entry of judgment for tenant); *Snyder v. I. Jay Realty Co.,* 30 N.J. 303, 153 A.2d 1 (1959) (judgment for tenant where landlord retained control over common passageways and tenant exercised no measure of control over such passageways); *compare Coyle v. Gerritsen Ave. Shopping Center, Inc.,* 176 A.D.2d 232,

574 N.Y.S.2d 57 (2d Dept.1991) (summary judgment denied in parking lot slip and fall where defendant tenant had occasionally cleaned drain into which plaintiff fell); *Farrar v. Teicholz,* 173 A.D.2d 674, 570 N.Y.S.2d 329 (2d Dept.1991) (issue of fact as to control where defendant tenant regularly inspected parking lot and notified landlord of defects or hired contractor to perform repairs).

Inasmuch as the plaintiff here neither alleged nor presented any facts which could reasonably be found to demonstrate possession and control by the resident tenant defendants of the mall parking lot, the court must conclude that there is no factual basis for her allegation of possession and control by the resident defendants. Hence, there is no reasonable possibility that the resident defendant could be held liable and they are therefore due to be dismissed from this action. The court will, therefore, reverse the magistrate judge's order of remand and dismiss the resident defendants.[7]

Based on the foregoing, it is ordered that defendants' application for review of the magistrate judge's order of remand is granted and the order remanding this case to the Circuit Court for the First Judicial District of Hinds County is reversed. It is further ordered that plaintiff shall have ten days from the entry of this order to respond to the motion of the nonresident tenant defendants for summary judgment.

7. There is pending before the court a motion to dismiss filed by all tenant defendants, resident and nonresident, and the court has been requested to consider that motion to dismiss contemporaneously with the application for review. The motion to dismiss was filed several months after the plaintiff filed her motion to remand but at a time before the magistrate judge ruled on the motion to remand. The magistrate judge ruled on the motion to remand at or about the time the plaintiff's response to the motion to dismiss became due. Plaintiff, therefore, did not respond to the motion to dismiss. Rather, defendants appealed the magistrate judge's ruling and the parties have, since that time, devoted themselves to the matter of the application for review.

The court, utilizing the summary judgment-type analysis approved in *Carriere,* is in a position to conclude on the application for review that the resident defendants have been improperly joined since there has been no factual substantiation of plaintiff's conclusory allegation of possession and control.

As to the remaining tenant defendants, though they have styled their motion as one to dismiss, they have included matters extraneous to the pleadings and therefore, the motion is treated more appropriately as one for summary judgment. *See* Fed.R.Civ.Proc. 12(b). In an abundance of caution, the court will grant plaintiff ten days from the entry of this order to submit a response to defendants' motion.