# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01532-COA

**WILBUR M. WASHINGTON, JR. AND HAZEL M. WASHINGTON**　　　　　　　　**APPELLANTS**

**v.**

**WEST QUALITY FOOD SERVICES, INC.**　　　　　　　　　　**APPELLEE**

DATE OF JUDGMENT:               09/29/2017
TRIAL JUDGE:                    HON. DAL WILLIAMSON
COURT FROM WHICH APPEALED:      JONES COUNTY CIRCUIT COURT,
                                SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANTS:        WAYNE E. FERRELL JR.
ATTORNEY FOR APPELLEE:          JOHN D. BRADY
NATURE OF THE CASE:             CIVIL - PERSONAL INJURY
DISPOSITION:                    AFFIRMED - 12/03/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., TINDELL AND LAWRENCE, JJ.

### J. WILSON, P.J., FOR THE COURT:

¶1.　　Wilbur Washington was injured when he slipped and fell in a restroom at a gas station convenience store. He later sued various entities that owned the property or that operated or were affiliated with the gas station or the convenience store. He also sued West Quality Food Services Inc. (West), a Kentucky Fried Chicken (KFC) franchisee that operated a restaurant as a tenant in another part of the same building as the convenience store. Washington eventually settled with and/or voluntarily dismissed all defendants other than West.

¶2.　　Washington alleged that West failed to exercise reasonable care to keep the restroom in a reasonably safe condition. West moved for summary judgment, arguing that it did not

exercise control over the restroom, which was in a common area of the building. The circuit court granted West's motion, and Washington appealed. We agree with the circuit court that there is no genuine issue of material fact or evidence that West exercised control over the restroom. Therefore, West is entitled to judgment as a matter of law, and we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. Tugwell Oil Company built the "Casino Center Exxon II" in Robinsonville in 1996. The property consisted of a gas station and a convenience store with a restaurant on either end of the convenience store. A Subway sandwich shop was at one end of the building. Tugwell leased the other end to West to operate a KFC franchise. There were no restrooms in the part of the building that Tugwell leased to West. Restrooms were located off a foyer between the convenience store and the KFC.

¶4. West's lease with Tugwell required Tugwell to maintain the restrooms and other "common areas" of the building. West was required to pay Tugwell part of the cost of maintaining the common areas, including the restrooms. West agreed to pay Tugwell $500 per month for such costs.

¶5. In 2003, Tugwell sold the Casino Center Exxon II to Tunica Properties LLC. West and Tunica Properties continued to operate under the original Tugwell-West lease, and West continued to pay Tunica Properties $500 per month for maintenance costs.[1]

¶6. In May 2009, Washington was driving from Memphis to Tunica. He and his family

---

[1] Tunica Properties was originally a defendant in the case. The court entered an agreed order dismissing Tunica Properties without prejudice in 2012. Four years later, at a hearing on West's motion for summary judgment, Washington's counsel indicated that perhaps he should not have agreed to dismiss Tunica Properties.

had been to Memphis for the day while in Tunica for a convention. On their way back to Tunica, they stopped at the Casino Center Exxon II to use the restroom and to get something to eat at the KFC.

¶7.    The restrooms were off a foyer just inside the entrance to the convenience store. Washington and his son went in the men's restroom. While in the restroom, Washington slipped and fell in "water and urine" that had collected around a "big drain . . . in the floor." He tried to get up, but he slipped and fell again. Washington immediately experienced pain in his shoulders. He reported his fall to a cashier named Casey at the convenience store. The Washingtons then bought some chicken from the KFC and went back to their hotel.

¶8.    Washington returned to the convenience store the next day. He asked Casey if he could fill out an incident report, but Casey said, "No—we don't do incident reports." Washington then left the store. He never reported his fall to any employee in the KFC because he did not think the restrooms were part of the KFC.

¶9.    In February 2011, Washington sued West and various entities that owned the property or that operated or were affiliated with the gas station or the convenience store.[2] Washington eventually settled with and/or voluntarily dismissed all defendants other than West. In 2015, West moved for summary judgment on the ground that it did not own or exercise control over the convenience store's restrooms. The circuit court initially reserved ruling on West's motion and ordered West to produce additional documents. After additional discovery, the court granted West's motion on the ground that Washington had not produced any evidence

_____

[2] The Casino Center Exxon II and the KFC restaurant subsequently closed in November or December 2011.

3

that West exercised control over the restrooms. Washington appealed.

¶10. On appeal, Washington argues (1) that whether West exercised control over the restroom is a disputed issue of fact; (2) that "West had partial control over the men's restroom," improperly "delegated a nondelegable duty to maintain a safe premises," and improperly "delegated a duty that involves a dangerous hazard"; and (3) that he is entitled to a "negative inference" due to West's failure to produce documents in response to a court order. We address these issues below. We agree with the circuit court that there is no genuine issue of material fact and that West did not exercise control over the restroom. Washington's remaining arguments are without merit. Therefore, we affirm.

**ANALYSIS**

¶11. "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the [non-moving] party . . . ." *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (quotation marks omitted). Summary judgment "shall be rendered" if the record evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Thus, "summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Karpinsky*, 109 So. 3d at 89 (¶11) (quotation marks omitted). The non-moving "party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or [deposition testimony, answers to interrogatories, or admissions], must set forth specific facts showing

4

that there is a genuine issue for trial." M.R.C.P. 56(e).

## I. West did not exercise control over the restrooms.

¶12. "Generally speaking, under Mississippi law, a tenant may be liable for injuries occurring on those parts of the premises which are . . . actually leased by the tenant." *Doe v. Cloverleaf Mall*, 829 F. Supp. 866, 870 (S.D. Miss. 1993). As discussed above, the restroom at issue in this case was *not* part of the premises actually leased by West. West's lease provided in relevant part:

> Lessee, at the expense of Lessee, shall maintain the demised premises and appurtenances to the demised premises in good repair and in at least as good condition as that in which they were delivered, allowing for ordinary wear and tear.

> Lessee agrees to pay Lessor, in addition to the rentals specified in this Lease Agreement, a proportion of the Lessor's operating cost for the common facilities in the building leased, based upon the ratio of the square footage of the demised premises to the total square feet of all the building space leased. The term "operating cost" shall mean the cost and expense incurred in operating and maintaining the common facilities actually used or available for use by Lessee and its employees, agents, customers, and other invitees including but not limited to, painting, lighting, removal of snow or garbage, security sanitation, repairs, and public liability and property damage insurance premiums. The term "common facilities" shall mean all areas, equipment and services provided by Lessor for the common or joint use and benefit of Lessee and its employees, agents, customers, and other invitees, more specifically, but not limited to, common areas, parking lots and **rest rooms**.

(Emphasis added). Pursuant to the latter provision, West paid the lessor $500 per month for maintenance of the common facilities, including the restrooms.[3] Thus, the restrooms were not part of the "demised premises" that West leased and had a contractual obligation to

---

[3] We note that such a payment by a tenant "does not demonstrate [that the tenant has] possession and control of the common areas. It is merely a financial undertaking." *Doe*, 829 F. Supp. 2d at 873.

maintain. Rather, they were part of the "common facilities" that the lessor was required by contract to maintain.

¶13.    When, as in this case, "the lessor reserves control over a designated area for common use of tenants," the lessor has a duty to exercise reasonable care to keep the common area in a reasonably safe condition, and the lessor will be liable for any injuries that result from a breach of that duty. *Wilson v. Allday*, 487 So. 2d 793, 796 (Miss. 1986).[4]  A lessee has a "concurrent" duty to maintain such an un-leased common area only if its use of the common area is "tantamount to possession and control." *Id.* at 797-98.  "Conversely, if the lessee's use of the [common area did] not constitute control, there would be no duty owed and therefore no cause of action" against the lessee. *Id.* at 797.

¶14.    Washington argues that there is a triable issue of fact in this case as to whether West's use of the restroom was "tantamount to possession and control."  Washington specifically argues that language in the lease's insurance and indemnity provisions and certain standards for KFC franchisees create a triable issue of fact.  We disagree.

¶15.    To start with, there is no evidence that West or any of its employees ever had or exercised any actual control over the restrooms.  West's on-site manager, Marva Gardner, stated that West's employees never cleaned, maintained, or otherwise exercised any control over the restrooms.  If a customer ever raised an issue with the restrooms, West's employees would tell the customer to tell an employee in the convenience store.  Avit Varma, who

---

[4] *Wilson* was later overruled in part but only as it relates to a landowner's duty with respect to "open and obvious" dangers. *See Mayfield v. The Hairbender*, 903 So. 2d 733, 736 n.1 (Miss. 2005).

6

operated the gas station and convenience store, testified that his employees cleaned the restrooms.[5] Varma testified that his employees would "go and take care of" any issues with the restrooms. Varma also stated that he had a part-time worker who would service and clean the restrooms daily. Varma testified that West's employees did not "check the restrooms on a regular basis," and he never saw any West employees clean the restrooms.

¶16.    Washington also argues that the insurance and indemnity clauses in West's lease are evidence that it controlled the restrooms. However, the insurance clause simply required West to maintain a "liability policy for accidents or damages on or about the demised premises, common areas and areas appurtenant to the demised premises and common areas." The mere fact that the lease required West to obtain a liability policy that extended to the common areas does not show that West exercised *control* over the common areas. West's employees could have caused insurable accidents or damages in un-leased areas of the property over which they had absolutely no control or authority. The same is true of the indemnity clause, which only required West to indemnify the lessor for accidents, injuries, or damages that occurred "on or about the demised premises." The clause does not reference common areas or restrooms, but even assuming that it applies to the common areas, it does not show that West exercised *control* over those areas. In short, nothing in the lease itself shows that West exercised control over the restrooms. Rather, as discussed above, the lease

---

[5] Varma operated the gas station and convenience store pursuant to a lease with Tunica Properties LLC. Varma apparently took on the cost and responsibility of cleaning the restrooms in the common area, although it appears that Tunica Properties kept for itself the $500 per month that it received from West for maintenance. Washington named Varma as a defendant but eventually settled with him.

indicates just the opposite.

¶17. Washington also argues that certain provisions of KFC's "standards" applicable to its franchisees' operations show that West exercised control over the restroom. KFC's standards require franchisees to make regular inspections of the restrooms in their restaurants. However, West's employees testified that those particular standards only apply to standalone locations or other locations that have restrooms inside the restaurant. They testified that the standards did not require West's employees at locations such as the Casino Center Exxon II to inspect restrooms that were not under West's control. Washington produced nothing to contradict West's evidence on this issue. Washington's reliance on the KFC standards simply begs the question. There is no evidence that the standards apply to the restroom at issue in this case.

¶18. This case is distinguishable from *Wilson*, *supra*, which involved a claim against a lessee/grocery store for an injury to a customer caused by a pothole in the parking lot in front of the store. *Wilson*, 487 So. 2d at 794-95. The parking lot in *Wilson* was not part of the leased premises, and the landlord was responsible for maintaining it; but the grocery store "had erected a cart corral there and its employees went onto the lot at least twelve times each day to gather its carts." *Id.* at 797. In addition, the store "invited customers to park in the lot in front of the store and instructed its employees to park in other designated areas on the lot." *Id.* The Supreme Court held that the grocery store's presence and activities in the parking lot were sufficient for a jury to find that it "occupied and controlled" the lot. *Id.* at 797-98.

¶19. In contrast, there is no evidence in this case that West or its employees exercised any control over the restroom at issue. The restroom was not part of the restaurant's operations, and West's employees were not assigned any duties or responsibilities with respect to the restroom. Further, there is no evidence that West placed any advertising materials or other property in the restroom. The restroom was available for use by West's employees and customers—just as it was for the employees and customers of the gas station/convenience store and the adjoining Subway. But "mere use" of the restroom, "even though this use resulted in economic benefit to [West], is *not* tantamount to possession and control." *Doe*, 829 F. Supp. 2d at 872 (emphasis added) (distinguishing *Wilson* and holding that there was no evidence that mall tenants exercised control over the mall's parking lot).

¶20. In summary, Washington presented no evidence that West exercised any degree of control over the restroom at issue. Therefore, the circuit court correctly ruled that there was no genuine issue of material fact and that West was entitled to judgment as a matter of law.

## II. West did not attempt to delegate a "nondelegable duty."

¶21. Citing *American National Insurance Co. v. Hogue*, 749 So. 2d 1254, 1258 (¶12) (Miss. Ct. App. 2000), Washington next argues that a "property owner" cannot "delegate" its duty to keep its premises reasonably safe for invitees. He argues that West has violated this principle by taking the position that its landlord was responsible for maintaining the common areas of the property. However, as explained above, West is not a property owner or even a lessee with respect to the restroom at issue, and there is no evidence that West was in charge of or exercised any control over the restroom. As such, West did not "delegate"

9

any duty. West did not have a duty to begin with.

### III. Washington is not entitled to any "negative inference."

¶22. In 2016, the circuit court ordered West to produce any files concerning audits of the subject restaurant by Steritech, a third-party auditor that inspected KFC restaurants on behalf of KFC. West subsequently informed Washington that it no longer had any such files. West acknowledged that Steritech conducted audits of the subject restaurant in 2008 and 2009, but "West did not maintain those audits as it was not required or needed to do so." West did produce Steritech reports from restaurants in Laurel and Collins as exemplars. The Laurel location had restrooms within the restaurant, and the Steritech reports included comments on the condition and cleanliness of those restrooms. In contrast, there were no restrooms within the Collins restaurant, which, like the Robinsonville restaurant, shared its location with a convenience store. Thus, the Steritech reports for the Collins restaurant noted that the restrooms were not inspected because West was "not responsible for the . . . restrooms." West stated that audit reports for the subject restaurant "would have contained similar comments, because West employees had no responsibility for the restrooms" at that location either. Washington then filed a motion to compel West to produce documents or, in the alternative, for a ruling that he was entitled to a "negative inference" based on West's failure to produce the documents. On appeal, Washington argues that the circuit court erred by not granting him such an inference when ruling on West's motion for summary judgment.

¶23. Washington was not entitled to any negative inference. A negative inference may arise if a party deliberately or negligently destroyed relevant evidence. *DeLaughter v.*

10

*Lawrence Cty. Hosp.*, 601 So. 2d 818, 821-22 (Miss. 1992). But in this case, there is no evidence that West's disposal of Steritech reports was deliberate or negligent. As noted above, Washington did not notify any of West's employees of his fall when it occurred, he did not file suit against West until February 2011, and there is no evidence that there would have been any independent reason or necessity for West to have retained Steritech reports for any period of time. Accordingly, there was no evidence of negligence on West's part and no basis for a negative inference.

**CONCLUSION**

¶24. There is no evidence showing that West possessed or exercised control over the subject restroom. Therefore, West was entitled to judgment as a matter of law, and the circuit court properly granted summary judgment.

¶25. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., NOT PARTICIPATING.**