ROBERTSON, Justice, for the Court:
Plaintiff, Toxey Hall Ward, appeals from a judgment of the Circuit Court of the First Judicial District of Hinds County, which judgment was based upon a jury verdict for the defendants, Valley Steel Products Company and Finis R. Merkel, Sr.
Ward brought three identical suits for $100,000 each for the deaths of his three minor sons, Robert, Steven and Jason. These suits were consolidated for trial.
The automobile accident in which the Ward children were killed occurred about 9:00 p. m. on November 10, 1972. Mrs. Esther Smith Ward, plaintiffs wife and the mother of the three little boys, was wrongfully driving her Pontiac stationwagon south in a northbound lane of Interstate 55, about IV2 miles south of the Terry exit from the highway. Interstate 55, a controlled access highway, at this point consisted of two northbound lanes and two southbound lanes, separated by a 30-foot grass median strip. Three tractor-trailer units were proceeding north in the east (slow-speed) northbound lane of the highway.
Ray Chapman was driving the lead unit, which was an empty grain tractor-trailer combination, the wooden sides of the trailer extending the height to about 12 feet above the highway. The second unit in line was an empty grain tractor-trailer, identical in height to the Chapman unit, driven by Homer Parsley. The third tractor-trailer unit was fully loaded with steel pipe, was owned by Valley Steel Products Company and was being driven by Finis R. Merkel, Sr.
The only eyewitnesses were Chapman, Parsley and Merkel, Mrs. Ward having also been killed in the collision. Merkel was called as an adverse witness by the plaintiff, and testified that as the highway became rough and the Chapman and Parsley trucks slowed down that he pulled into the west (fast-drive) northbound lane to pass; that Parsley in the second truck also pulled into the west northbound lane to pass; that the Parsley truck suddenly tried to pull back into the east northbound lane, and that it was at that instant that he got a glimpse of the lights as the Ward station-wagon went underneath the cab of his truck. Merkel stated that he was probably 50 to 100 feet back of the Parsley truck in the west northbound lane, that his vision, of course, was blocked by the Parsley truck, and that he only saw Mrs. Ward’s automo *1363 bile as it went under his cab just in the bat of an eye.
Chapman in the lead truck testified as a witness for the defendants. He described what he did and how the accident happened in this way:
“[A]s I went over the crest of this little hill or a rise in the highway, I see some bright lights coming and I couldn’t determine at that moment whether they were in the wrong lane but it looked like they were so I flipped my lights a couple of times there to get it to dim where I could get a better location of the car and then I discovered that the car was in the wrong lane so immediately I jerked on my emergency flashers and started braking the tractor down and pulled into the shoulder of the road.
“Q All right, sir. And what is an emergency flasher?
“A Well, it’s a four way flasher that all the signal lights start flashing for a warning signal.
“Q Then what happened?
“A Well, by the time I — before I could get plumb to the shoulder of the road, this car had veered slowly out of my lane into the other lane of traffic and it caught Mr. Merkel head-on.
“Q Now, before you saw the car, what lane were you travelling in?
“A I was in the right outside lane.
“Q When you first saw this car of Mrs. Ward’s, what lane was it in?
“A It was in my lane. It was also in the outside lane headed southbound.
“Q All right, sir. Now, did she have lights on her car?
“A Yes, sir, they were on full bright.
“Q Did you do anything to try to warn her, please, sir?
“A Yes, sir, I flipped my lights at her a couple of times with the dimmer and I didn’t get any response or anything from her or either from my emergency flashers.
“Q All right, sir. Did her car remain in your lane?
“A No, sir, it changed lanes slowly over to the inside lane.
“Q Did it hit your truck?
“A No, sir.
“Q How close did it come to your truck, please, sir?
“A Well, it was still in the inside lane when it went by me as I was getting off to give her more room. As I was veering off the highway, I kept looking in the mirror and, about that time, she hit the Valley Steel Company truck head-on.
“Q Now, could you estimate what speed this automobile was making before this collision?
“A She was doing around the speed limit — around sixty or better.”
Homer Parsley, who was driving the second tractor-trailer unit, testified that he was not passing but was following Chapman’s truck in the right northbound lane; that Merkel had pulled abreast of him in the left northbound lane; that he, Parsley, did not see the car lights of the Ward car until just before the collision. He could see that the Merkel truck with the front of the stationwagon underneath the cab was veering to the right, so he (Parsley) took emergency action and went off on the right shoulder somewhat ahead of Chapman.
The impact knocked out the braking system and steering mechanism on Merkel’s truck, so Merkel’s truck with the station-wagon underneath came in between the Parsley and Chapman trucks and went off of the right shoulder of the east northbound lane.
This case was tried twice before a jury. Both trials resulted in a jury verdict for the defendants. Plaintiff moved for a new trial after the first jury verdict, and the court granted a new trial. The court was of the opinion that Nobles v. Unruh, 198 So.2d 245 (Miss.1967), was applicable; that it was doubtful whether it should have given a sudden emergency instruction for the defendants, and that it was also of the opinion that it had erroneously refused plaintiff’s instruction number 10, which instruction provided that if Merkel had moved his vehicle from the east to the west northbound *1364 lane without ascertaining that the west lane was free of the oncoming vehicle of Mrs. Ward, and Merkel was unable to return his tractor-trailer to the east lane and collided with the automobile driven south by Mrs. Ward, then Merkel was negligent and if the jury believed that “such negligence proximately caused or contributed to the death of the Plaintiff’s children”, then it was the jury’s sworn duty to return a verdict for the plaintiff.
On the second trial the court refused to approve a sudden emergency instruction for the defendants, and did grant instruction number 10 for the plaintiff. The jury again returned a verdict for the defendants.
The plaintiff’s sole assignment of error was that “The Court below erred in failing to sustain the Motion of the appellant for a peremptory instruction and directed verdict.”
The appellant states in his brief that he relies specifically on Nobles v. Unruh, supra, which he contends is on all-fours with the case at bar.
In Nobles v. Unruh, supra, Mrs. Amanda Frank Nobles was riding as a guest passenger in an automobile operated by Carl M. Unruh. The Court, in its opinion, gave these facts:
“The automobile was proceeding in an easterly direction in the southernmost lane of U. S. Highway 82, approximately two miles west of Greenwood. The highway at this point consists of four traffic lanes, two lanes for eastbound vehicles and two lanes for westbound vehicles. The east and west lanes are separated by a median or dividing island. At the time of the collision the weather was clear and sunny and the highway was dry. The highway at the point of collision is straight and flat for a long distance.
“Appellee was traveling at approximately fifty-five miles per hour. He overtook a transport truck which was also traveling in an easterly direction toward Greenwood. Both appellee’s vehicle and the transport truck were traveling in the south traffic lane reserved for eastbound vehicles. The truck had red lights flashing on its rear. Appellee proceeded in the south traffic lane until he was within approximately twelve feet of the rear of the transport. At that point he suddenly turned his vehicle into the adjacent north traffic lane in order to pass the transport, and upon doing so collided head-on with a pick-up truck which was proceeding in the wrong direction in the north traffic lane reserved for eastbound traffic. The collision resulted in the death of Mrs. Nobles, appellee’s quest passenger.” 198 So.2d at 246.
The only traffic law in question in Nobles was Mississippi Code Annotated section 8187 (1956) [now Mississippi Code Annotated section 63-3-603 (1972)], which section provides in part:
“1. A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.”
In deciding Nobles, this Court said:
“By appellee’s own admission he was in violation of section 8187 at the time of the accident. The statute imposed upon him the duty to ascertain that the north eastbound lane of traffic was clear before he began passing the vehicle preceding him. This he failed to do. This Court has said on numerous occasions that the violation of statutes of this type, when neither explained nor excused, constitutes negligence as a matter of law. .
“There is no dispute in the testimony, and appellee offered no evidence excusing or justifying his conduct. For this reason the lower court erred in overruling appellants’ request for a peremptory instruction.” 198 So.2d at 247 (Emphasis added).
In this writer’s opinion, Nobles v. Unruh was properly decided on the facts of that case, but there are many essential and important differences between that case and the case at bar.
1. In Nobles, suit was brought by the heirs of the deceased guest passenger in the *1365 automobile (which suddenly pulled out and attempted to pass the transport truck) against her host driver. In the case at bar, the suit was brought by the father of his three deceased minor children (who were riding with their mother who was wrongfully and negligently driving south in a northbound lane of Interstate 55) against the truck driver and his employer rightfully driving north in a northbound lane of a controlled access highway.
2. In Nobles, the weather was clear and sunny. In the case at bar, it was 9 o’clock at night.
3. In Nobles, the accident took place on U. S. Highway 82, an unlimited access highway, while in the case at bar the accident took place on Interstate 55, a controlled access highway.
4. In Nobles, the defendant suddenly drove his automobile into the passing lane when he was approximately 12 feet from the transport truck he was attempting to pass. In the case at bar, Merkel gradually pulled his tractor-trailer into the passing lane when he was some distance from the truck in front of him.
5. In Nobles, the defendant pulled out to pass a truck with red lights flashing on its rear. In the case at bar, Merkel gradually pulled out to pass and had been in the passing (fast-drive) lane several seconds when the truck in the right northbound lane suddenly put on its emergency flashers and began to veer to the right.
6. In Nobles, the collision occurred immediately after the defendant driver had pulled into the passing lane. In the present case, the collision occurred much later.
7. In Nobles, “[b]y appellee’s own admission he was in violation of section 8187 at the time of the accident.” In the present case, the testimony of the three eyewitnesses showed no violation of the statute.
8. In Nobles, there was no dispute in the testimony that Unruh was negligent and was violating a statute. In the present case, the testimony of the only eyewitnesses (Merkel, Chapman and Parsley) was that there was no negligence on the part of Merkel, and that the accident was due solely to the negligence of Mrs. Ward.
9.In Nobles, the defendant (passing driver) offered no evidence excusing or justifying his conduct. In the present case, the testimony of Merkel, Chapman and Parsley justified Merkel’s conduct, and showed that the sole proximate cause of the accident was Mrs. Ward’s great negligence.
The appellant also contends that Merkel was within 50 to 100 feet of Parsley’s truck and was violating Mississippi Code Annotated section 63-3-619 (1972), which provides in part:
“(1) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.
“(2) The driver of any motor truck or motor truck drawing another vehicle when traveling upon a roadway outside of a business or residence district shall not follow within three hundred feet of another motor truck or motor truck drawing another vehicle. The provisions of this subsection shall not be construed to prevent overtaking and passing nor shall the same apply upon any lane specially designated for use by motor trucks.” (Emphasis added).
We note that Section 63-3-619(2) specifically provides that the 300 foot provision “shall not be construed to prevent overtaking and passing.”
Chapman’s testimony was clear, positive and unequivocal that the Ward automobile suddenly appeared in his lane of travel (the east northbound lane), had its lights on bright, paid no attention to his flashing lights, did not dim its lights, did not slow down, and veered over into the west northbound lane at 60 to 70 miles per hour in front of Merkel. The picture exhibits support Chapman’s testimony, in that the main impact was on the left front of the Ward stationwagon, which would indicate that the stationwagon was veering to its right at an angle.
*1366 Even if Merkel had been negligent, which was denied by all three eyewitnesses, his negligent act could not be said to be the proximate cause of an accident unless the accident could have been avoided in the absence thereof. Pargas of Taylorsville, Inc. v. Craft, 249 So.2d 403 (Miss.1971). All three eyewitnesses testified as to the inevitability of the accident due solely to the negligence of Mrs. Ward.
The issues of negligence, contributory negligence, and proximate cause were factual issues for the jury to decide and the trial court correctly submitted these questions to the jury to decide under proper instructions as to the law.
The judgment of the trial court based on the jury’s verdict is, therefore, affirmed.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and IN-ZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.