Margaret Joyce MAIN, as Administratrix of the Estate of David C.V. Yamas, Deceased, Sheryl Katherine–Ann Vavosa, and Paul Michael Martin Yamas, Plaintiffs,

v.

OFFICE DEPOT, INC., Defendant.

Civil A. No. 3:95–cv–135BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 31, 1996.

James D. Bell, James D. Bell & Associates, P.A., Jackson, MS, for plaintiffs.

Robert A. Miller and Susan Latham Steffey, Watkins & Eager, Jackson, MS, for defendant.

## OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the Motion for Summary Judgment filed by the Defendant Office Depot, Inc. ("Office Depot"). Having considered the Motion, Plaintiffs' Response, Defendant's Rebuttal, all attachments, and supporting and opposing memoranda, the Court finds that the Motion is well taken and should be granted.

### I. *Background*

This case is a wrongful death action brought by the Plaintiffs for the alleged negligence of Office Depot which Plaintiffs assert was a proximate cause of the death of David C.V. Yamas. Although Yamas' death occurred on December 10, 1993, the events which Plaintiffs allege contributed to that death began in early 1993. Prior to March, 1993, Jon Kolniak typed a false name, social security number and birth date on his computer, then cut these letters and pasted them on the face of an old driver's license with scotch tape. Kolniak then took the doctored license to Office Depot seeking to have copies made of the document. Kolniak approached a white male in the copy center of Office Depot and requested two color copies of the front of the doctored license. The Office Depot employee complied with Kolniak's request and made the copies, for which Kolniak was charged a fee.

It is undisputed that the policy of Office Depot was to refuse to make copies of documents such as drivers' licenses and certificates of title to motor vehicles. The User's Guide to the Kodak Color–Edge 1525 copier, on which Kolniak's copies were made, stated that some documents should not be copied, and included in that list are drivers' licenses. At least one employee of Office Depot testified by deposition that he had been approached by teenagers requesting copies of drivers' licenses, and that he had refused to make such copies. Dep. of Steven Carter at 22–23, attached as Exhibit 9 to Plaintiffs' Response. Barbara Jackson, the manager of the Business Service Center,[1] testified as to the content of the User's Guide. She also stated that a memo was placed on the wall near the copier stating that employees may refuse to copy any material that is objectionable or illegal, and she understood this memo to prohibit the copying of drivers' licenses. Dep. of Barbara Jackson at 19–20, attached as Exhibit 8 to Plaintiffs' Response.

After obtaining these color copies, Kolniak trimmed the paper, placed the old license on a wide piece of clear tape, placed a library card over the face of his old license, then placed the color copy of the doctored license on top. Kolniak placed another piece of wide clear tape on top of the color copy, then trimmed the edges of this creation to resemble a valid driver's license. *See* Exhibit 1 to Plaintiffs' Response. Kolniak then used this created document on numerous occasions to buy beer in and around the Jackson, Mississippi, area.

On the night that Yamas was killed, Kolniak purchased beer[2] at the Shell gas station

---

1. The Business Service Center is the area where copiers, including the color copier used to make copies for Kolniak, are located in the Office Depot store.

2. Mike Jefcoat was with Kolniak on December 10, 1993, when Kolniak purchased beer at the Reservoir Shell, although Jefcoat remained in the car while Kolniak made the purchase. Kolniak

near the Ross Barnett Reservoir ("the Reservoir Shell"). According to Kolniak, and Plaintiffs have offered no contrary evidence, he did not use his fake identification to purchase the beer from the Reservoir Shell on December 10, 1993. Kolniak stated in deposition testimony that he was only required to show identification on one occasion to buy beer at the Reservoir Shell, and this occasion was months prior to the December purchase. The person who requested the identification was a middle aged woman with dark hair. Kolniak stated that on one other occasion another clerk asked him for identification when he was attempting to buy beer. However, before he could show his identification, the woman with the dark hair, from whom Kolniak had previously purchased beer, told the second clerk that Kolniak was old enough. August 2, 1995, Kolniak Dep. at 14, attached as Exhibit 6 to Plaintiffs' Response. Ed Slaughter, one of the operators of the Reservoir Shell, disputes that Kolniak was only required to show his identification one time stating that he personally had required Kolniak to produce identification in order to buy beer. Slaughter further stated that he observed each person who worked behind the counter check Kolniak's identification on at least one occasion when Kolniak was purchasing beer. Affidavit of Ed Slaughter, attached as Exhibit 3 to Plaintiffs' Response.

After Kolniak purchased beer at the Reservoir Shell on December 10, 1993, he and Jefcoat went to a party where they each drank eleven or twelve beers. They left the party around 11:00 p.m. and drove to the Texaco station at Grant's Ferry Road and Lakeland Drive. While at the Texaco station, Jefcoat saw Yamas and Smitty Pumphrey and learned that they needed a ride home. Jefcoat asked Kolniak if he would give Yamas and Pumphrey a ride, and Kolniak agreed. After leaving the Texaco, Kolniak drove down Castlewoods Boulevard and Bradford Drive at speeds in excess of 70 miles per hour. Both Yamas and Pumphrey requested that Kolniak slow down, but he did not comply. Kolniak then lost control of the car, and the car left the road striking a concrete utility pole. Yamas suffered severe

bought 24 beers, 12 for himself and 12 for Jef-

injuries from which he later died. As a result of this incident, Kolniak pled guilty to DUI homicide and was sentenced to fifteen years in prison.

## II. *Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. at 2552–2553. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

Summary judgment can be granted only if everything in the record demonstrates that

coat.

no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962).

### III. *Analysis*

Plaintiffs assert that Office Depot violated Miss.Code Ann. § 63–1–60 (rev. 1989) (effective July 1, 1985), and that Defendant is therefore negligent *per se.* Alternatively, Plaintiffs assert that Office Depot owed some common law duty to Yamas and that Defendant breached this duty. Furthermore, according to Plaintiffs, such negligence, either by breach of the statute or common law, was a proximate cause of the wrongful death of David Yamas. Office Depot asserts that it did not owe any statutory or common law legal duty to David Yamas, and that even if a duty was owed, Office Depot did not breach that duty. Furthermore, Office Depot asserts that any alleged negligence of Office Depot could not possibly be the proximate cause of the death of David Yamas, Plaintiffs' decedent.

Because this is a diversity case, this Court is *Erie*[3] bound to follow Mississippi law. Because Mississippi has not specifically ruled on the issue presented in this case, the Court must apply general principles of Mississippi law to make an *Erie* guess concerning how the Mississippi courts would rule if presented with the specific issue in this case. In that regard, the traditional elements of a claim for negligence are duty or standard of care, breach of that duty or standard, proximate cause and damages or injury. *Lyle v. Mladinich*, 584 So.2d 397, 399 (Miss.1991). The Court will address the issues of duty, breach and proximate cause. There is no question that Plaintiffs decedent was injured and subsequently died from those injuries.

### A. *Was Office Depot Negligent Per Se?*

 The question of whether Office Depot owed any duty to Plaintiffs' decedent is a question of law for the Court. *Doe v. Cloverleaf Mall*, 829 F.Supp. 866, 873 (S.D.Miss. 1993); *Lyle*, 584 So.2d at 400. To prove negligence *per se* under Mississippi law, Plaintiffs must show that (1) Plaintiffs' decedent is a member of the class sought to be protected by the statute; (2) the resultant harm is of the type sought to be prevented by the statute; and (3) Office Depot violated the statute in question. *U–Haul Co. v. White*, 232 So.2d 705, 708 (Miss.1970). The first two elements are a question of duty, and the third element concerns the breach of any duty owed. Because the facts are not in dispute in this case, the Court may decide the issue of duty. Furthermore, because no reasonable juror could conclude otherwise, the Court may also determine whether any such duty was breached.

 The statute at issue in this case is Miss.Code Ann. § 63–1–60 which provides as follows:

(1) It shall be unlawful for any person:

(a) To display, cause or permit to be displayed, or have in his possession, any fictitious, fraudulently altered or fraudulently obtained driver's license;

(b) To display or represent any driver's license not issued to him as being his own driver's license;

(c) *To photograph, photostat, duplicate or in any way reproduce or alter any driver's license, or facsimile thereof, in such manner that it could be mistaken for a valid driver's license;*

(d) To display or have in his possession any photograph, photostat, duplicate, reproduction or facsimile of a driver's license unless authorized by law; or

(e) To take a driver's license examination for another or to use any other name, other than his own, on the driver's license examination for another.

(2) Any person convicted of a violation of this section shall be guilty of a misdemeanor and shall be punished by a fine of

---

**3.** *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

not more than Five Hundred Dollars ($500.00), or by imprisonment for not more than thirty (30) days, or by both such fine and imprisonment.

Miss.Code Ann. § 63–1–60 (rev. 1989) (emphasis added). Specifically, Plaintiffs assert that Office Depot violated subsection (1)(c) of the statute by making a color photocopy of Kolniak's doctored driver's license.

Plaintiffs assert that legislative intent should be determined from the affidavit of Paul Wells, who authored subsection (1)(c) of the statute for the Mississippi Department of Public Safety to present to the Mississippi legislature for passage. Wells was a "legislative liaison" between the Department of Public Safety and the legislature and states in his affidavit that this particular subsection was designed to prevent businesses from photocopying drivers' licenses which would then enable minors to purchase alcoholic beverages. Affidavit of Paul Wells, attached as Exhibit 4 to Plaintiffs' Response. The Court finds, however, that the opinion of a lobbyist who was successful in getting the legislation passed is not helpful in determining the intent of the legislature in passing the law. Because Mississippi does not record any legislative history for laws passed by the Mississippi legislature, the Court must look to the language of the statute to determine the intent of the legislature.

> [T]he intent of the legislature must be determined by the total language of the statute and not from a segment considered apart from the remainder.... Also, the intent of the legislature must be determined by studying words used in a statute in context.

*McCluskey v. Thompson,* 363 So.2d 256, 259 (Miss.1978) (citations omitted).

The Court finds that Miss.Code Ann. § 63–1–60 was designed to prevent persons from making and using fake or improper drivers' licenses. The statute is found in Title 63 of the Mississippi Code entitled Motor Vehicles and Traffic Regulations. The statute does not purport to prevent minors from purchasing alcoholic beverages and does not specifically state that it applies to businesses which have photocopying capability. Rather, the statute is entitled "Alteration, fraudulent use,

or fraudulent procurement of license; penalty." Miss.Code Ann. § 63–1–60. Title 63 is known as the Highway Safety Patrol and Driver's License Law of 1938. Miss.Code Ann. § 63–1–1. This title was amended in 1985, to add the provision which is now codified as Miss.Code Ann. § 63–1–60, and the preface to that amendment states as follows:

AN ACT TO PROHIBIT THE ALTERATION OR FRAUDULENT USE OF A MISSISSIPPI DRIVER'S LICENSE; TO PROHIBIT PERSONS FROM FRAUDULENTLY OBTAINING A DRIVER'S LICENSE; TO PROVIDE PENALTIES FOR THE VIOLATION THEREOF; AND FOR RELATED PURPOSES.

1985 *Miss.Laws,* Ch. 479. Furthermore, subsections (1)(a), (b), (d) and (e) are aimed toward preventing the holders or owners of drivers' licenses from misusing such licenses. Those subsections use such phrases as "have in his possession" in subsections 1(a) and (d), "not issued to him" in subsection 1(b) and "other than his own" in subsection (1)(e). It would not be consistent with the rest of this section for the Court to hold that subsection (1)(c) applies to businesses who could potentially copy a driver's license when all of the other sections of the statute apply only to the holders or owners of a driver's license. If the Mississippi legislature is so inclined, it may rewrite the statute to address the potential liability of businesses such as Office Depot. However, the Court will not rewrite the statute to include within its purview businesses such as Office Depot. The Court agrees with Office Depot that "[t]he principle behind this legislation is to prevent abuse and misuse of the driver's license privilege by persons who hold the licenses, not to regulate the conduct of businesses such as Office Depot." Defendant's Reply Brief at 3.

For these reasons, the Court finds that § 63–1–60 was not designed to protect the Plaintiffs' and/or their decedent from the type of harm suffered in this case. The provisions of the statute are aimed at the holders and owners of drivers' licenses and not businesses, such as Office Depot, which might make a photocopy of a driver's license.

■ The Court further finds that Plaintiffs and their decedent are not within the class of persons which the statute is designed to protect. The statute does not address any potential alcohol related injuries, and certainly does not attempt to protect guest passengers from being injured by underage drunk drivers. Mississippi does have a law, however, which specifically prohibits the sale of alcoholic beverages to minors. *See* Miss.Code Ann. § 67–1–81 (rev. 1991).[4] Mississippi also has an Implied Consent Law which provides for the suspension of a person's license when (1) that person refuses to take a blood alcohol test when requested to do so by a law enforcement officer who has reason to believe that the person was driving while intoxicated, or (2) the chemical testing of that person's breath indicates a blood alcohol level of .10% or more by weight volume of alcohol. Miss. Code Ann. § 63–11–23 (rev. 1989). While Plaintiffs and their decedent are within the class of persons protected by the sale of alcohol to minors statute and the Implied Consent Law, they are not within the protection of the statute in this case which is merely designed to prohibit holders and owners of drivers' licenses from misusing those licenses.

### B. *Did Office Depot Owe Any Common Law Duty to Plaintiffs' Decedent?*

■ Plaintiffs assert that "Office Depot would be negligent under the facts of this case even in the absence of a statute forbidding the reproduction of driver's licenses." Plaintiffs' Memorandum in Response at 9. Thus, Plaintiffs are attempting to impose some common law duty upon Office Depot to refrain from photocopying drivers' licenses to prevent underage drivers from constructing fake identification in order to purchase alcoholic beverages, become drunk, drive recklessly and cause the death of innocent persons. In this regard, Plaintiffs filed a Supplemental Response to Motion for Summary Judgment, attaching the affidavit of Nick Strickland, of Strickland Quick Print, Inc., as an expert witness. Strickland states as follows in his affidavit:

> I instruct all store employees to make no color photocopies of drivers licenses, stamps, bonds or other official documents under any circumstances. The reason we have such restrictions is to avoid violation of Mississippi law. Another reason we have such restrictions is to prevent teenagers or others from using those copies to make false driver's license [sic]. In my opinion, it would be beneath the standard of care expected of a reasonable printer to make a color copy of a drivers license for a teenager.

Affidavit of Nick Strickland, attached to Plaintiffs' Supplemental Response to Motion for Summary Judgment.

The Mississippi Supreme Court has not addressed this issue. If presented with the question, the Court finds that the Mississippi Supreme Court would find that no such duty exists absent a change in the law enacted by the Mississippi legislature. Several Mississippi cases involving alcohol related injuries are instructive in this regard.

In *Boutwell v. Sullivan,* 469 So.2d 526 (Miss.1985), the court addressed the issue of social host liability. In that case, the Branans were invited to the Sullivans for a party, and Billy Mack Sullivan had a keg of beer at this party from which he served his guests. *Id.* at 527. Thomas Newell Branan drank quite a bit of this beer, and Sullivan continued serving beer to Branan after Branan became visibly intoxicated. *Id.* Branan left the party in his automobile, and negligently ran into a motorcycle driven by Sidney F. Boutwell, Jr. *Id.* Boutwell brought suit against the Sullivans alleging that they negligently served beer to Branan after he became visibly intoxicated. *Id.* The court declined to impose liability upon social hosts for the negligence of their guests in drinking and driving:

> ty-one (21) years shall be guilty of a misdemeanor and shall be punished by a fine of not less than five hundred dollars ($500.00) nor more than one thousand dollars ($1,000.00) for a first offense.
>
> Miss.Code Ann. § 67–1–81 (rev. 1991).

---

**4.** This statute provides in relevant part as follows:

> Any permittee or other person who shall sell, furnish, dispose of, give, or cause to be sold, furnished, disposed of, or given, any alcoholic beverage to any person under the age of twen-

We recognize that there is a strong public policy to discourage driving while under the influence of intoxicating liquor. Also, we are aware of the problems a host would encounter in trying to control his guests, viz, in many social situations a host is unable to keep an eye on his guests and to what extent they are imbibing; if the guest is the host's employer, he may not be able to control him; a physical difference in size between host and guest would have bearing; in situations where the host and guest were friends, even though few people were involved, it might be difficult for the host to control his guests....

In the case sub judice, neither Mississippi statutes nor the common law impose liability upon Sullivan.... We are of the opinion that this question, which involves strong public policy and change of the law, should be studied comprehensively and addressed by the Mississippi State Legislature.

*Id.* at 529.

In *Cuevas v. Royal D'Iberville Hotel,* 498 So.2d 346 (Miss.1986), the plaintiff asserted that defendant violated Miss.Code Ann. § 67–1–83(1) (1972) by serving her alcoholic beverages while she was visibly intoxicated. In her inebriated condition, plaintiff fell over a railing and plunged thirty feet to the lobby floor, sustaining serious injuries. *Id.* at 347. The court held that the public, a third-party class whether minor or adult, is protected under the statute from the negligent acts of an intoxicated person. *Id.* at 348.

> However, we do not think the legislature intended to impose liability upon a dispenser of intoxicants to an adult individual, such as appellant here, who voluntarily consumes intoxicants and then, by reason of his inebriated condition, injures himself. We further hold that such a person as appellant is excluded from the protected class....

*Id.* at 348–49 (citations omitted).

Finally, in *Williams v. United States Fidelity & Guar. Co.,* 854 F.2d 106 (5th Cir.

1988), the United States Court of Appeals for the Fifth Circuit concluded as follows:

> [N]either the Mississippi legislature nor its courts has imposed on employers a duty to supervise their premises so as to prevent employees from clandestinely consuming intoxicants or to prevent employees from going about their personal business in a state of inebriation.

*Id.* at 109. The *Williams* court relied in part on *Munford Inc. v. Peterson,* 368 So.2d 213, 215 (Miss.1979) which held that "[u]nder the common law, there is no action for damages in the selling or giving away of intoxicating liquors."

The Court finds that the Mississippi Supreme Court, absent some statutory requirement to do so, has been reluctant to extend liability in alcohol related injury cases to persons who are not directly involved in causing the injury. The Court further finds that, if presented with the question of imposing liability upon Office Depot in this case, the Mississippi Supreme Court would decline to impose such liability under the common law. The Court therefore holds that Office Depot owed no common law duty to Plaintiffs' decedent in this case to refrain from copying a doctored driver's license for Kolniak.

### C. *Is the Alleged Negligence of Office Depot A Proximate Cause of Yamas' Death?*

■ Even if the Court assumes that Office Depot owed a duty to Plaintiffs' decedent and that it somehow breached that duty,[5] the Court must still determine whether any triable issue of fact remains with regard to the proximate cause element. "Proximate cause is the connection between the breach of duty and damages and arises when the breach of a duty contributes to the injury." *Lyle,* 584 So.2d at 400 (citing *Clayton v. Thompson,* 475 So.2d 439, 445 (Miss.1985)). The Mississippi Supreme Court has addressed the issue of proximate cause and intervening causes:

> Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening

---

**5.** The Court will not address the issue of breach in any great detail. The Court assumes, for the purposes of this analysis, that if any duty was owed by Office Depot, that Office Depot breached the duty by copying Kolniak's doctored driver's license.

cause which efficiently thence leads unbroken in sequence to the injury, the later is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a non-actionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof.

*Mississippi City Lines, Inc. v. Bullock,* 194 Miss. 630, 13 So.2d 34, 36 (1943), *cited with approval in Boyd v. Continental Baking Co.,* 887 F.Supp. 913, 916 (N.D.Miss.1995); *Foster by Foster v. Bass,* 575 So.2d 967, 982 (Miss. 1990); *Glorioso v. YMCA,* 556 So.2d 293, 296 (Miss.1989). The Mississippi court has also held that a "negligent act could not be said to be the proximate cause of an accident unless the accident could have been avoided in the absence thereof." *Ward v. Valley Steel Products Co.,* 339 So.2d 1361, 1366 (Miss. 1976) (citation omitted). Plaintiffs have the burden of presenting sufficient evidence to create a genuine issue of material fact to present to the jury on the issue of proximate cause. Plaintiffs have failed to meet this burden.

Plaintiffs assert and Office Depot concedes that Kolniak obtained two color copies of the front of a doctored driver's license from Office Depot. Kolniak obtained these copies in early 1993, at least prior to March, 1993. Kolniak used this fake identification on many occasions to purchase beer, and had used the fake driver's license on at least one occasion, and possibly more, to purchase beer at the Reservoir Shell. Kolniak did not use the fake driver's license to purchase the beer which he consumed on December 10, 1993, the night Yamas was killed. These undisputed facts reveal that the negligence of the Reservoir Shell in selling beer to Kolniak [6] and Kolniak's negligence in drinking and driving [7] are the proximate causes of the death of Yamas. These causes are intervening causes which serve to cut off any alleged negligence by Office Depot in providing Kolniak the means to construct a fake driver's license. As stated by the *Ward* court, no reasonable juror could find that the accident which occurred could have been avoided if Kolniak had never obtained the color copies from Office Depot. *Ward,* 339 So.2d at 1366. Kolniak could have possibly obtained the beer without a fake driver's license; [8] he could have consumed someone else's beer on the night in question; or he could have obtained the beer in some other manner. There is no question that Kolniak had been drinking beer for a period of years before he ever constructed the fake driver's license which is the subject of this suit. In fact, Kolniak had two previous DUI convictions when he was 16 years old (blood alcohol level of .18%) and when he was 17 years old (blood alcohol level of .17%). August 2, 1995, Dep. of Kolniak at 27–28. The Court therefore finds that the fact that in early 1993, Office Depot made color photocopies of a doctored driver's license from which Kolniak constructed a fake driver's license could not be considered a proximate cause of the accident which resulted in the death of Yamas. For this reason, Office Depot is entitled to judgment as a matter of law.

### IV. *Conclusion*

The Court finds that Office Depot owed no statutory or common law duty to Plaintiffs or their decedent under the circumstances of this case. Even if Office Depot owed such a duty, Office Depot did not breach any such duty. Finally, even if Office Depot owed a duty to Plaintiffs' and/or their decedent, and even if Office Depot breached this duty, such breach was not the proximate cause of the death of David Yamas.

---

**6.** Miss.Code Ann. § 67–3–53 provides that any person who sells, gives or furnishes beer or light wine to any person under the age of 21 is absolutely liable therefor. Thus, the operators of the Reservoir Shell are negligent *per se* for selling beer to Kolniak because he was underage.

**7.** After the accident, Kolniak's blood alcohol level was .15%. August 2, 1995, Dep. of Kolniak at

**31.** As stated previously, Mississippi law provides that a person may not drive with a blood alcohol level of .10% or greater. Miss.Code Ann. § 63–11–23 (rev. 1989).

**8.** Kolniak testified that he had purchased beer from other stores prior to obtaining the fake driver's license. August 2, 1995, Dep. of Kolniak at 19.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by Office Depot should be and hereby is granted.

SO ORDERED.